{¶ 190} Respectfully, I dissent. Before addressing certain issues raised by the majority, I must first express my concern that this is not a final and appealable order. The last lines of the lengthy sentencing entry appealed from here states, "Court reserves Judgment on restitution amount until further proceedings. Defendant is to pay court costs. Defendant remanded * * *." Similarly, the transcript reads:
 {¶ 191} "Also, what I'll do is I will allow the State of Ohio togather restitution information. I will be happy to set another date fora hearing with respect to any restitution because we do not have thosefigures now at this point. I think it's important that these victimshave on the record here the restitution which is appropriate to beordered for both of these defendants, Mr. Sutton and Mr.Phillips[2] So I will leave that part of the sentencing open and allowthe State to gather that information and so the defendant will have anopportunity to be heard with respect to *Page 51 restitution. I can incorporate that at a later date.
 {¶ 192} In State v. Threatt, 108 Ohio St.3d 277, 2006-Ohio-905,843 N.E.2d 164, the Ohio Supreme Court held that "`[a] judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order.'" Id. at ¶ 20, quoting Bell v.Horton, 142 Ohio App.3d 694, 696, 2001-Ohio-2593, 756 N.E.2d 1241.[3]
The First District in In re Holmes (1980), 70 Ohio App.2d 75,434 N.E.2d 747, held that there was no final and appealable order where the defendant had been ordered to pay restitution, but the hearing on restitution had yet to occur. Id. at 77.
 {¶ 193} Similarly, the Eleventh District in In re Zakov (1995),107 Ohio App.3d 716, 669 N.E.2d 344, held, in the case of a juvenile traffic offender, that the notation that "`Restitution to be determined' rendered this entry interlocutory." Id. at 718. In a domestic relations case, this court held that "[b]ecause the claim for spousal support was filed and remains pending and unadjudicated in the trial court, *Page 52 
any disposition of the action was only partial and interlocutory."Schweinfurth v. Meza (June 21, 2001), Cuyahoga App. No. 78507, at 5.
 {¶ 194} Finally, in State v. Kuhn, Defiance App. No. 4-05-23,2006-Ohio-1145, the judgment entry of sentencing ordered "Kuhn to pay restitution `to the victim's family for funeral and burial expenses of the decedent.'" Id. at ¶ 8. The Third District held that since "the judgment entry does not set forth either a specific amount of restitution or the method of payment[,] * * * [it] does not settle either `the amount of restitution [or] the method of payment,' [and] it is not a final appealable order." Id., quoting In re Holmes, supra at 77
 {¶ 195} In short, I would hold that this panel is without jurisdiction to review this conviction because it is not a final and appealable order. Nonetheless, insofar as the majority rejects the finding that this court is without jurisdiction to review this matter at this time, I am compelled to respond to its findings.
 {¶ 196} In his tenth assignment of error, appellant argues that he was denied due process of law and subjected to multiple punishments when he was sentenced consecutively based on firearm specifications. In counts one, two, three, and four, appellant was found guilty of attempted murder (one count for each of the four victims in the car), and upon each of those counts, one-, three-, and five-year gun specifications. The trial court correctly merged all the one-and three-year gun specifications, and again correctly held that the three-and five-year specifications were to run consecutively to each other and consecutively to the base charges. The *Page 53 
court erred, however, in sentencing each of the resulting eight-year firearm specifications consecutively to each other.
 {¶ 197} R.C. 2929.14(D)(1)(b) provides that more than one additional firearm penalty shall not be imposed "for felonies committed as part of the same act or transaction." The concept of "same act or transaction" was defined by the Ohio Supreme Court in State v. Wills,69 Ohio St.3d 690, 1994-Ohio-417, 635 N.E.2d 370, as "`a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" Id. at 691, quoting State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720. This court has applied this single transaction rule where the defendant fired five shots into a house containing multiple victims. See State v. Kaszas (Sept. 10, 1998), Cuyahoga App. Nos. 72546 and 72547.[4] *Page 54 
 {¶ 198} I would find that firing at the automobile was one continuous transaction, and that although multiple victims were involved, justifying a charge for each victim in the car, only one eight-year gun specification could be run consecutively to the consecutively sentenced base charges. *Page 55 
 {¶ 199} I likewise dissent from the majority's reading and application of State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, as regards their analysis of allied offenses of similar import. InState v. Sutton, Cuyahoga App. No. 90172, 2008-Ohio-3677, this court considered this issue on behalf of Michael Sutton, a co-defendant of Phillips, convicted at the same trial. Sutton was the driver of the automobile in question, but was not convicted of any of the gun specifications. He was convicted of four counts of attempted murder, one for each occupant of the car. He was additionally sentenced on the various felonious assaults that related to the four victims in the car. This court held that the various felonious assaults were allied offenses of similar import to the attempted murder charges, and that Sutton could not be separately sentenced upon them.[5]
 {¶ 200} Specifically, this court stated the following inSutton:
 {¶ 201} "R.C. 2945.25 provides that "(A) when the same conduct of the defendants can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." For the last nine years, trial and appellate courts have struggled to determine when different counts are allied *Page 56 
offenses of similar import utilizing the guidelines of State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, with uneven results.
 {¶ 202} "In April 2008, the Supreme Court of Ohio issued State v.Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, in an attempt to clarify Rance and thereby encourage uniformity among the trial and appellate courts. Cabrales holds that R.C. 2945.25 mandates a two-step analysis. In the first step, the elements of the crimes are compared in the abstract. If the elements of the offenses `correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.' To the extent that courts believed under Rance that this comparison required a strict alignment of elements, Cabrales clarifies that this is not so; in Cabrales, the Supreme Court recommends a more `holistic' approach.
 {¶ 203} "In State v. Smith, Hamilton App. No. C-060991,2008-Ohio-2561, one of the first cases to utilize Cabrales, the court observed, `it is absurd to insist' that a defendant could `constitutionally be sentenced' for two crimes when there was only one act and one victim. In this case, Smith committed one act against Varvados and one act against Taylor. Therefore, he could have been sentenced for only one crime against each victim." Id. at ¶ 27, quotingState v. Smith, Hamilton App. No. C-070216, 2008-Ohio-2469.
 {¶ 204} "In the second prong on the Cabrales analysis, if the court finds that the crimes were committed separately or that there was a separate animus for *Page 57 
each crime, then and only then, may the defendant be convicted of both offenses.
 {¶ 205} "As to the first part of the analysis, we compare as follows: attempted murder is attempting to purposely cause the death of another. Felonious assault under R.C. 2903.11(A) is knowingly causing serious physical harm to another. Felonious assault under R.C. 2903.11(B) is knowingly causing or attempting to cause physical harm to another with a gun. Cabrales tells us that an exact alignment of the elements (as was required in Ranee) is not required. The issue then becomes whether shooting someone and hitting them in the head (two victims) and shooting at someone and missing them (two victims) are allied offenses of similar import to attempted murder (purposely trying to kill).
 {¶ 206} "We hold here that shooting at someone and hitting them, but not killing them, and shooting at someone but not hitting them, are both manners in which these attempted murders were perpetrated. In fact, the various felonious assaults are subsumed in the attempted murders. Hence, the first prong (the elements of all the various felonious assaults charged here, if proved, would result in the commission of attempted murder) is satisfied.
 {¶ 207} "The second prong of this inquiry is whether there was a separate animus to each of the felonious assaults; we hold there was not. There is one act-shooting the automobile. The fact that the automobile had four occupants resulted in single charges relating to each of the four victims, but the animus of the felonious assaults and the attempted murders was the same. Hence, we conclude that all of *Page 58 
the felonious assaults are allied offenses of similar import to the attempted murders." (Footnote omitted.) Sutton at ¶ 88-94.
 {¶ 208} Accordingly, I would hold that the felonious assault charges (and the gun specifications) that pertained to the four victims in the car were allied offenses of similar import to the attempted murder charges, and that while the findings of guilt may stand, the sentence upon each and every one of them should be vacated.
 {¶ 209} Although raised by appellant, but not directly addressed by the majority, is the issue of the two felonious assault convictions, each with multiple firearm specifications, that were returned by the jury where Officer Lentz was the victim. (Counts 16 and 17 of the indictment). Count 16 charged that Phillips "caused or attempted to cause physical harm to Ptl. Lentz by means of a deadly weapon or dangerous ordnance." Appended to this charge were one-, three-, and seven-year firearm specifications. Count 17 charged that Phillips "attempted knowingly to cause serious physical harm to Ptl. Lentz[,]" again with one-, three-, and seven-year firearm specifications. Both of these charges refer to the fact that after the shooting at the car with the four occupants, Officer Lentz chased and attempted to arrest Phillips — resulting in Phillips shooting at Officer Lentz. The two different felonious assault counts reference one act-one attempting to cause physical harm by means of a gun, the other attempting simply to cause serious physical harm.
 {¶ 210} Obviously, there is ample evidence in the record to support a *Page 59 
verdict of guilty to both of these charges, but these different charges resulted from only one shooting and hence must be merged for purposes of sentencing.[6] Additionally, R.C. 2929.14(D)(1)(f) mandates that in the event that the court imposes a seven-year term for discharging a firearm at a police officer, the court may only impose that additional term, and may not combine it with any other firearm specifications. Hence, the ten-year charge imposed upon Phillips is in error; the maximum that may be imposed is seven years.
 {¶ 211} Consistent with what I have said above about "different transactions" however, these gun specifications permissibly may be sentenced consecutively to the attempted murder charges involving the original four persons in the car. In short, although Phillips may be found guilty of both felonious assaults against Officer Lentz (including their various gun specifications), Phillips may be sentenced on only one count. That count, and its attendant seven-year specification, however, may be assessed consecutively to the attempted murder counts and their merged firearm specifications as regarding the victims in the car.
 {¶ 212} Thus, if Phillips were to be sentenced to the maximum sentence available at law on counts one, two, three, four, and 16 or 17, and were those *Page 60 
sentences all to run consecutively to each other, the maximum Phillips could be sentenced to upon those counts would be 65 years.
 {¶ 213} Insofar as I would return this case to the trial court for resentencing, I would hold that the issue of whether the number of years imposed by the trial court upon this 18-year old defendant is contrary to law, is moot, only appropriately to be addressed, if necessary,after the above-described illegal portions of Phillips' sentence are rectified.
 {¶ 214} Accordingly, I dissent from the majority's resolution of the tenth assignment of error.
 {¶ 215} I also dissent in part from the majority's disposition of the fourth assignment of error. In that assignment, Phillips contends that he was denied due process and a fair trial because the court allowed the State to question him concerning juvenile adjudications. The specific questioning was as follows:
 {¶ 216} "Q. Mr. Phillips, now, you testified that you don't get into trouble. You just take care of your kids, and basically you are a good person, correct?
 {¶ 217} "A. Yes. Ain't never been in trouble as an adult.
 {¶ 218} "Q. Now, but you do have an adjudication for offenses thatwould be felonies in Juvenile Court, correct?" (Emphasis added.) *Page 61 
 {¶ 219} The majority holds that, because Phillips, in direct examination, testified as to his "life history," without mentioning his juvenile adjudications, "an exception existed permitting the prosecutor to ask appellant regarding his juvenile adjudications" on cross-examination. I agree with appellant that this was wholly improper cross-examination insofar as the statement "ain't never been in trouble as an adult" does not "open the door" to questions about juvenile adjudications. See Evid. R. 609(D). I cannot, however, in context of the facts of this case, which exist wholly independent of issues of Phillips personal credibility, find this error to be anything but harmless.
 {¶ 220} In conclusion, I would hold that this court is without jurisdiction to review the partial sentencing in this case. However, in response to the decision of the majority, I would find that the 92-year sentence imposed by the trial judge in this case is "contrary to law" as outlined above, and I would vacate the sentence and remand the matter to the trial court for resentencing. I would also hold that the State's questioning of Phillips on his juvenile adjudications while error, was harmless.
[2] The court never journalized an order of restitution for defendant Sutton.
[3] In Threatt, the issue was an order of court costs that had not been calculated. The Court found it to be a final appealable order because the remaining act was purely ministerial.
[4] Not raised directly in the context of the sentencing on the multiple firearm specifications, but rather raised more directly as regarding sentencing under the base charges, is whether the "same transaction" or "different transaction" finding that the court must make to determine whether firearm specifications are to be run consecutively or concurrently is implicated under the U.S. Supreme Court's rulings inApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed. 2d 435, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed 2d 403, and the Ohio Supreme Court's ruling in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[5] This court noted in Sutton that it believed that the trial judgedid find allied offenses of similar import as he sentenced all the various felonious assault charges concurrently instead of consecutively. This court remarked in Sutton that "[t]his panel notes that it sees numerous cases where trial judges find certain counts are allied offenses and proceed to sentence concurrently; while the outcome in the ultimate sentence may be the same, the appropriate manner of `merging' is to make a finding that the counts are allied offenses, proceeding to sentence only on the greater felony (in this case `felonies') and not sentencing at all upon the allied counts." Id. at fn. 17
[6] Cabrales, supra. *Page 1